UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE,   Case No. _____
            Hon. _____

    Plaintiff,

v.

THE REGENTS OF THE
UNIVERSITY OF MICHIGAN;
THEO NASH, in his individual and
official capacities; BASIL DUFFALO,
in his individual and official capacities;
SEAN EDGERTON, Coordinator of
Academic Integrity, Office of Student
Academic Affairs (OSAA), in her
individual and official capacities;
CHRISTINE O'NEIL, Deputy
Assistant Dean of OSAA, in her
individual and official capacities,

    Defendants.

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF JURY DEMAND**

**I.     INTRODUCTION**

1. Plaintiff JANE DOE is an undergraduate student at the University of Michigan (U-M) who has documented disabilities, including Generalized Anxiety Disorder ("GAD") and Obsessive Compulsive Disorder ("OCD").

1

2. U-M had notice of Plaintiff's disabilities and need for accommodations through its Services for Students with Disabilities ("SSD") process and medical documentation beginning no later than February 7, 2025.

3. In Fall 2025, Plaintiff's Graduate Student Instructor ("GSI") in Great Books 191, Theo Nash, initiated a series of academic-misconduct accusations asserting that Plaintiff used artificial intelligence ("AI") to write course papers. The accusations were based heavily on subjective judgments about Plaintiff's writing style and on self-confirming "AI comparison" outputs generated using Plaintiff's own outlines and content.

4. Plaintiff vehemently denied use of AI for the course papers and timely provided proof of the same as well as disability-related documentation explaining that traits associated with GAD and OCD, including formal tone, meticulous structure, stylistic consistency, and heightened distress during oral confrontation, can be misinterpreted as artificial or dishonest behavior and are not proof of AI misuse.

5. Despite that notice, U-M and its Office of Student Academic Affairs ("OSAA") proceeded with disciplinary actions without implementing disability-informed accommodations, allowed the same accuser to remain the gatekeeper for grading and remedial work, and imposed sanctions that resulted in a "No Record" ("NR") grade on Plaintiff's transcript.

6. The NR grade and associated disciplinary sanctions are causing immediate and irreparable harm by blocking degree requirements and delaying Plaintiff's anticipated graduation, and by threatening Plaintiff's academic record and future educational opportunities, including transfer applications and professional school plans.

7. Plaintiff brings this action to (a) stop ongoing and imminent transcript and graduation harm while this case is pending; (b) obtain a fair, disability-informed process; and (c) recover damages and other relief for disability discrimination, retaliation, and violations of due process.

## II.     JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and 42 U.S.C. § 1983.

9. This Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and Defendants reside in and conduct business in this District.

### III.   PARTIES

11. Plaintiff JANE DOE is a resident of the State of Ohio. Plaintiff is an undergraduate student enrolled at U-M in Ann Arbor, Michigan.

12. Defendant The Regents of the University of Michigan is the governing body of U-M and is responsible for U-M's policies, practices, and operations, including OSAA's academic integrity processes and the maintenance of student academic records.

13. Defendant Theo Nash is, on information and belief, a Graduate Student Instructor ("GSI") for Great Books 191. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive and declaratory relief.

14. Defendant Basil Duffalo is, on information and belief, the lead instructor for Great Books 191 and/or supervisory faculty associated with the course and its academic integrity processes. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive and declaratory relief.

15. Defendant Sean Edgerton is the OSAA Coordinator of Academic Integrity who handled Plaintiff's academic misconduct matters, including scheduling,

4

communications, and responsibility determinations. Edgerton is sued in his individual capacity for damages and in his official capacity for prospective injunctive and declaratory relief.

16. Defendant Christine O'Neil, Deputy Assistant Dean of OSAA responsible for oversight of OSAA's academic integrity processes and decisions. O'Neil is sued in her individual capacity for damages and in her official capacity for prospective injunctive and declaratory relief.

### IV. FACTUAL ALLEGATIONS

17. Plaintiff has been under continuous medical care since February 2025 for GAD and OCD. These conditions substantially limit one or more major life activities, including concentration, thinking, communicating, and interacting with others in high-stress settings.

18. Plaintiff's disabilities affect her ability to tolerate high-stress academic and disciplinary proceedings, particularly those requiring live verbal defense, rapid processing, and adversarial questioning. Plaintiff's treating clinicians have confirmed ongoing medication management and regular follow-up.

19. Plaintiff's clinicians warned that anxiety- and OCD-related writing traits – such as a formal tone, meticulous structure, stylistic consistency, and highly organized presentation – may be misinterpreted as artificial or dishonest behavior, and that

5

Plaintiff's limitations necessitate disability-informed handling of any disciplinary proceedings.

20. U-M had notice of Plaintiff's disabilities and need for accommodations through SSD and medical documentation beginning no later than February 7, 2025. SSD accommodations for Great Books 191 were approved on or about September 19, 2025.

21. On information and belief, Defendant Nash publicly posted statements reflecting a predisposition to assume AI misuse by students and to treat AI-related concerns as a core academic "values" issue, including statements such as: "If a university cannot stand up for its values against AI then death is only a mercy," and "I fear that grading has made me paranoid and inclined to see AI everywhere."

22. On November 8, 2025, Nash filed an academic misconduct Accusation #1 with OSAA and wrote that he was "immediately suspicious" that Plaintiff's paper was written by AI because the "style was unmistakable."

23. On November 12, 2025, Plaintiff submitted medical and psychological documentation to OSAA explaining that disability-related writing traits could be misinterpreted as AI and should not be treated as proof of misconduct.

24. On November 14, 2025, Plaintiff participated in an OSAA teleconference to respond to Accusation #1. On November 18, 2025, Plaintiff submitted a formal written defense and supporting materials.

6

25. On November 20, 2025, Nash filed Accusation #2 with OSAA. On information and belief, Nash's accusation materials included AI-generated comparison outputs created by prompting AI with Plaintiff's own outline and with instructor feedback, then treating the resulting similarity as proof of AI use – a circular methodology that will naturally produce overlapping outputs and is not reliable evidence of misconduct.

26. On December 2, 2025, Nash requested an unsupervised, informal meeting with Plaintiff. Nash's email did not specify the purpose for the meeting. Plaintiff declined to meet on an unsupervised, informal basis. Plaintiff did not request that communications proceed through OSAA. Plaintiff later learned, after receiving an OSAA notice, that Nash interpreted her declination as "self-destructive" and a refusal of help, and then submitted another accusation to OSAA with Sean Edgerton.

27. On December 3, 2025, Plaintiff participated in an OSAA teleconference regarding Accusation #2 and provided additional written defense materials.

28. On December 10, 2025, OSAA issued a responsibility finding addressing Accusations #1 and #2 and imposed disciplinary sanctions.

29. On December 15, 2025, Nash filed Accusation #3 regarding Plaintiff's Paper 4.

30. On December 23, 2025, Plaintiff submitted a formal complaint to U-M leadership, including the LSA Dean and the University President's office, raising

7

concerns about disability discrimination, retaliation, harassment, and lack of procedural neutrality in the OSAA process. U-M responded by directing Plaintiff to the appeal process and communicating an appeal deadline of December 24, 2025.

31. On December 24, 2025, Plaintiff submitted a formal appeal to the Student Academic Judiciary challenging OSAA's December 10 responsibility finding.

32. On December 24, 2025, Plaintiff also filed a joint civil rights complaint with the U.S. Department of Education Office for Civil Rights ("OCR") and with U-M's Equity, Civil Rights, and Title IX Office ("ECRT").

33. After Plaintiff filed civil rights complaints, OSAA notified Plaintiff that her appeal would be paused until ECRT completed its review.

34. On January 2, 2026, Plaintiff requested that OSAA permit her to present her defenses in writing rather than through additional live Zoom proceedings, consistent with her disability-related limitations.

35. On January 13, 2026, Plaintiff submitted a formal written defense to OSAA contesting Accusation #3 (Paper 4).

36. On January 14 and January 15, 2026, Plaintiff submitted written notices to OSAA explaining that an NR grade was blocking degree requirements and graduation and that her transcript and future educational opportunities were being harmed immediately.

37. OSAA confirmed in writing that (a) the appeal could not proceed until ECRT resolved its review; (b) sanctions would remain in effect in the interim; and (c) grading and remedial work remained under the control of Nash – the same GSI who filed Accusations #1 through #3 and who is named in Plaintiff's OCR/ECRT complaint.

38. On January 19, 2026, ECRT issued a written scope-based dismissal, reasoning that Plaintiff had approved SSD testing accommodations. Plaintiff does not dispute that she received testing accommodations; her disability-discrimination complaint was that, during the OSAA proceedings, Defendants treated disability-related traits and limitations as evidence of guilt and failed to apply disability-informed modifications in the academic integrity process. For Great Books 191, in particular, Plaintiff's testing accommodations have limited relevance because the course does not involve timed examinations; Plaintiff nonetheless routinely provides accommodation notices to all courses to inform instructors of her disabilities.

39. On January 26, 2026, OSAA issued a responsibility finding on Accusation #3 (Paper 4), extended disciplinary probation through May 1, 2027, and required a reflective essay as a sanction.

40. As a result of Defendants' actions, Plaintiff is required to rewrite the entire term's worth of essays for Great Books 191. The first upcoming deadline is February

9

10, 2026. Plaintiff may resubmit these essays for a maximum grade of a C; if Plaintiff refuses to resubmit, Professor Basil Duffalo stated that Plaintiff will receive an F in the course. In addition, Plaintiff's transcript reflects an NR grade for Great Books 191. Unless corrected promptly, the NR grade and associated disciplinary sanctions will delay Plaintiff's degree conferral, impede transfer applications, and impair professional school admissions prospects.

41. Defendants' continued maintenance and dissemination of a disciplinary finding and NR grade while Plaintiff's appeal is stalled is causing irreparable harm that cannot be fully remedied by money damages, even if Plaintiff ultimately prevails on the merits.

## V.  CLAIMS FOR RELIEF

### COUNT I – REHABILITATION ACT (SECTION 504) – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

42. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

43. U-M is a public university and a "program or activity" receiving federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

44. Plaintiff is an individual with a disability within the meaning of Section 504.

45. Plaintiff is otherwise qualified to participate in and receive the benefits of U-M's programs and activities, including its academic programs and course credit, with reasonable accommodations.

46. Defendants denied Plaintiff the benefits of U-M's programs and subjected Plaintiff to discrimination solely by reason of disability by, among other things: (a) treating disability-related writing traits as evidence of misconduct; (b) failing to provide disability-informed and reasonable modifications in the disciplinary process; (c) relying on unreliable and circular "AI comparison" methods as purported proof; (d) pausing Plaintiff's appeal after she reported discrimination and sought civil rights protection; (e) maintaining and disseminating an NR grade and discipline while withholding appellate review; and (f) leaving grading and remedial requirements in the hands of the same accuser during the pendency of an unresolved appeal.

47. Defendants failed to make reasonable modifications and provide reasonable accommodations necessary to afford Plaintiff an equal opportunity to participate in the academic integrity process and to preserve her academic standing.

48. Defendants' conduct was intentional and/or exhibited deliberate indifference to Plaintiff's federally protected rights.

49. Plaintiff has suffered and will continue to suffer damages, including educational delay, loss of opportunities, emotional distress, and out-of-pocket costs, and is entitled to injunctive, declaratory, and monetary relief.

**COUNT II – ADA TITLE II – DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION**

50. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

51. Title II of the ADA, 42 U.S.C. § 12132, prohibits a public entity from excluding a qualified individual with a disability from participation in or denying the benefits of the services, programs, or activities of the public entity, or otherwise subjecting such individual to discrimination by reason of disability.

52. U-M is a public entity within the meaning of Title II.

53. Plaintiff is a qualified individual with a disability within the meaning of Title II.

54. Defendants discriminated against Plaintiff by reason of disability and failed to reasonably accommodate Plaintiff's disability-related limitations in the academic integrity process and related academic decisions, resulting in an NR grade, extended probation, and ongoing transcript harm.

55. Plaintiff engaged in protected activity by requesting accommodations and by filing complaints with U-M leadership, OCR, and ECRT. Defendants then paused

Plaintiff's appeal and maintained sanctions and transcript notations, which constitute adverse actions taken because of Plaintiff's protected activity.

56. Plaintiff is entitled to declaratory and injunctive relief, and, to the extent permitted by law, compensatory damages.

### COUNT III – 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS

57. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

58. Plaintiff has constitutionally protected liberty and property interests in her continued enrollment, academic standing, and in being free from arbitrary disciplinary sanctions and stigmatizing transcript notations without due process of law.

59. Defendants, acting under color of state law, deprived Plaintiff of due process by, among other things: (a) relying on subjective stylistic suspicion and unreliable AI comparisons as the basis for discipline; (b) failing to provide a meaningful and disability-informed opportunity to respond, including by refusing reasonable accommodation; (c) pausing Plaintiff's appeal after she sought civil-rights protection; (d) maintaining sanctions and transcript harm while withholding appellate review; and (e) allowing the accusing instructor to remain the effective gatekeeper of grading and remedial requirements during the pendency of an unresolved appeal.

60. Defendants' actions were arbitrary, capricious, and fundamentally unfair, and were taken with deliberate indifference to Plaintiff's constitutional rights.

61. Plaintiff is entitled to injunctive and declaratory relief, as well as compensatory damages against the individual defendants in their personal capacities and such other relief as the Court deems just and proper.

## COUNT IV – DECLARATORY RELIEF (28 U.S.C. § 2201)

62. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

63. An actual and justiciable controversy exists between the parties regarding whether Defendants' conduct violates the ADA, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment.

64. Plaintiff seeks a declaration that Defendants' actions and omissions described above violated Plaintiff's rights.

## PRAYER FOR RELIEF

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Declare that Defendants' actions and omissions violated the ADA, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment;

C. Issue temporary, preliminary, and permanent injunctive relief preserving Plaintiff's academic record while this case is pending, including by staying any adverse transcript notation and third-party disclosure relating to the

challenged responsibility findings and NR grade, and by preventing further adverse academic actions based on the challenged accusations;

D. Order Defendants to provide Plaintiff a prompt, fair, and disability-informed process, including review by a neutral decisionmaker, and to lift or stay sanctions pending completion of that process;

E. Award Plaintiff compensatory damages to the extent permitted by law;

F. Award Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and other applicable provisions;

G. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: February 9, 2026

Respectfully submitted,

*/s/ Carla D. Aikens*
Carla D. Aikens, PLC
615 Griswold St., Suite 709
Detroit, MI 48226
(844) 835-2993
carla@aikenslawfirm.com
Carla D. Aikens (P69530)
*Attorney for Plaintiff*